**Alma June MAYO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–01064–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 23, 1993.

Randolph Earl Roll, Brian W. Wice, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson, Bill Stradley, Houston, for appellee.

Before COHEN, O'CONNOR and PRICE,* JJ.

## OPINION

O'CONNOR, Justice.

The appellant, Alma June Mayo, pled guilty to the offense of theft. The trial court sentenced her to 18–years confinement. In two points of error, the appellant argues the trial court violated her rights to equal protection and due process of law by basing her sentence on her indigence. We affirm.

### Factual background

The appellant was the head bookkeeper at the law firm of Schechter & Lieberman. In December 1990, the office administrator, Caroline Winter, began to suspect the appellant was embezzling money from the firm. After Winters told Arthur Schechter about her concerns, Schechter hired an accounting firm to audit the firm's books. The investigation initially revealed the appellant had embezzled more than $200,000 from the firm. Later, the appellant herself provided the accounting

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

firm with information indicating she had embezzled at least $400,000. Of the amount embezzled, the appellant returned about $60,000 in the form of cash, jewelry, and fur coats to the firm in December 1990. Because further restitution seemed unlikely, Schechter discontinued the investigation to determine the total amount taken when the cost of the investigation exceeded $30,000.

At trial and on appeal, the appellant was represented by appointed counsel, from which we can presume the appellant is indigent. *Bush v. State,* 557 S.W.2d 772, 773 (Tex.Crim.App.1977).

### Procedural background

The appellant pled guilty. At the punishment hearing, the trial judge engaged in the following discussion with Schechter:

The Court: What hope do you have of getting restitution, what wish do you have? Let me explain that Mr. Schechter. Since you don't practice criminal law you may not know what I'm talking about. If a person gets probation the most they can get is ten years. Nobody can get eleven years probation. Ten is the maximum and that ten years a condition of probation would be that she make restitution. But as you have expressed or when you were investigating fraud you said I'm going to quit investigating because there is no way she can pay me back.

Witness Schechter: Yes, sir.

The Court: So do you have any hope if she's given probation that she can make substantial restitution to you.

Witness Schechter: No sir and also we're dealing with that in a civil case.

The Court: And another thing I must tell you. I should have told you before I asked you this.

Witness Schechter: Yes, sir.

The Court: Person gets probation and the condition of probation is that they make restitution. They cannot make restitution because of inability to pay she cannot be sentenced to the penitentiary. Am I correct on that Mr. Wicoff?

Mr. Wicoff: Depends on the kind of probation. Obviously if you give deferred adjudication you can adjudicate whatever your reasons and that's not appealable. It can be failure to pay restitution or whatever else you want to revoke her on.

The Court: So being realistic Mr. Schechter do you entertain any wish that she get deferred adjudication so she can try to make restitution or do you feel it hopeless or no way she can get it anywhere near the full amount of restitution.

Witness Schechter: I think Your Honor, if she is in a program where she's supposed to do restitution she'll figure some way to manipulate the system, manipulate herself out of it. I think because of the depth of this and the amount of the problem that it caused us by a person in a fiduciary relationship that she should do prison time

The Court: I want to apprise you. Probability I didn't say—

Witness Schechter: Yes, sir.

The Court: Certainly restitution.

Witness Schechter: I appreciate that sir.

■ The Code of Criminal Procedure provides that evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing when permitted by the rules of evidence. TEX. CODE CRIM.P.ANN. art. 37.07, § 3(a) (Vernon Supp.1993). Article 42.03 permits a victim to appear in person to present to the court a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim. TEX.CODE CRIM.P.ANN. art. 42.03, § 1(b) (Vernon Supp.1993). The victim's statement may be made only after punishment has been assessed and the court has determined whether or not to grant probation, and after the court has announced the terms and conditions of. probation. TEX. CODE CRIM.P.ANN. art. 42.03, § 1(b)(1), (2) (Vernon Supp.1993).[1] Here, the trial court permitted the victim, Schechter, to testify before punishment had been assessed and before the trial court determined whether or not to grant probation. Schechter testified not only about his views about the appellant,

1. The trial court may not inspect a victim impact statement until after a finding of guilt or until

deferred adjudication is ordered. TEX.CODE CRIM. P.ANN. art. 56.03(f) (Vernon Supp.1993).

her offense, and the effect of her offense upon Schechter and his law firm; he also expressed his opinion the appellant should serve time in prison. The appellant did not object to the substance of Schechter's testimony or that he should only be permitted to testify after punishment was assessed.[2] Thus, the appellant waived any error in admitting Schechter's testimony.

After closing arguments, the trial judge made the following statement:

The Court: All right, sir. Restitution in a case like this, I mean probation without restitution will be a travesty of justice. The victim would be the complainant or will be the defendant [sic]. The gainer will be the defendant. So I'm almost deprived of the opportunity to give probation. With all due consideration to everything[,] probation without restitution would be a terrible injustice. So therefore, while I have considered probation[,] I have considered deferred adjudication[,] but the longest time I can give her probation would be ten years. If she tries to recoup that $380,000.00 balance and that sixty that she paid it would be three-hundred twenty. Divide that by a hundred and eighteen months to make restitution would be $2,711.00 a month. Two thousand seven hundred eleven she would have to pay every month to make restitution. The total income of the Defendant and her husband is just a little over that. If she gets probation[,] as she said her employer will fire her so therefore she won't be able to make restitution. She just can't.

Mr. Wicoff: May I address that Your Honor?

The Court: No sir. I am forced to assess time in the penitentiary. I don't see how I can assess and therefore, I do assess eighteen years confinement in the Texas Department of Criminal Justice.

The appellant filed a motion for new trial, alleging, among other things, "[t]he punishment which was assessed, eighteen (18) years in prison, was contrary to the evidence, as

indicated by the trial court's post-sentence offer of deferred adjudication contingent upon the defendant's family raising $50,000.00 in restitution for the complainant." At the hearing on the motion for new trial, the following exchange took place:

Mr. Wicoff [appellant's counsel]: [O]n August the 6th pursuant to a PSI the Court held a sentencing hearing in this case. Miss Mayo was charged with felony theft, second degree. The Court considered the PSI, assessed a sentence of 18 years in prison. If the Court will recall, after the sentence was imposed on Miss Mayo, the Court called the complaining witness, Mr. Schechter, the assistant district attorney, Mr. Stradley[,] and myself to the bench and stated that if Miss Mayo could come up with $50,000 towards restitution to the complaining witness within the time awarded or allowed by the Motion for New Trial, the court would place her on deferred adjudication. Miss Mayo has been unable—

The Court: I probably said I would consider it. Go ahead.

Mr. Wicoff: Well, my recollection, Judge, and I stand to be corrected, is that you pretty much left it up to Mr. Schechter as to whether or not he would be amenable to such a thing, and if he wouldn't, then you wouldn't even consider it. But that if he was amenable to it, that you would place her on deferred adjudication so she could then start to make more restitution beyond that.... She has not been able to come up with any money during the period.... Basically, Judge, the Court's action in telling Miss Mayo that if she comes up with $50,000 that she will be entitled to receive a—really a lesser sentence in deferred adjudication whereas if she can't come up with it she's stuck with the eighteen years, we feel denies her equal protection rights under the 14th amendment to the United States Constitution, as well as her due process rights under Article 1.04 of the Code of Criminal Procedure and her equal

---

2. A nonexpert witness' opinion on the proper term of confinement for a defendant may be properly excluded under Tex.R.Crim.Evid. 701. *Hughes v. State,* 787 S.W.2d 193, 196 (Tex.App.—

Corpus Christi 1990, pet. ref'd); see *Gross v. State,* 730 S.W.2d 104, 106 (Tex.App.—Texarkana 1987, no pet.) (opinion of a nonexpert on punishment is of little value).

protection and due process rights under the Texas Constitution. Essentially, Judge, the situation she has now found herself in is that because of her—because of her poverty, she has to do the 18 years whereas if she had the money that the Court requested, she'd get deferred adjudication. . . .

\* \* \* \* \* \*

The Court: I'm sure if you check the records it will say I will consider it, Mr. Wicoff.

Mr. Wicoff: It was not on the record, Judge, which is why I have to get the record today.

The Court: If you would recall, I sentenced Miss Mayo. That was a sentence, no condition on sentence. And then I said whatever I said. If its not on the record, I'm not going to say, unless it's on the record. I just didn't want to lock the gates on Miss Mayo. It didn't do any good. So, there was no condition. It was simply giving her something to work for. As you say, there's no condition or conditions. One, Mr. Schechter approve it or went along with her, I have no objection, but no court of this court [sic] is obligated nor could make a promise if you pay, you get this. It wasn't you pay and you go. That wasn't it. If you can pay, you're opening a new avenue. Maybe we can help you there. Okay. . . .

### Imprisonment for debt

■ The appellant asserts she was imprisoned for debt, and the trial court violated her rights to equal protection and due course of law under TEX. CONST. art. I, §§ 10, 19; TEX. CODE CRIM.P.ANN. art. 1.04 (Vernon 1977), and the fifth and fourteenth amendments to the United States Constitution. She relies upon *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

In *Tate*, the Supreme Court held a state cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full. *Tate*, 401 U.S. at 399, 91 S.Ct. at 671. In *Bearden*, the Court, construing *Tate*, stated, "[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden*, 461 U.S. at 667, 103 S.Ct. at 2070. The Court in *Bearden* held if a probationer has made all reasonable efforts to pay a fine or restitution and cannot do so through no fault of his own, it is fundamentally unfair to revoke probation without considering whether adequate alternative methods of punishing the defendant are available. 461 U.S. at 668, 103 S.Ct. at 2070.

Neither *Tate* nor *Bearden* apply to the case before us. The appellant was not sentenced pursuant to a fine-only statute. Nor is she a probationer appealing the revocation of probation for failure to make restitution. Moreover, neither *Tate* nor *Bearden* preclude the trial court from considering a wide range of factors in the exercise of its sentencing function:

> The State, of course, has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws. A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially whether the State's penological interests require the imposition of a term of imprisonment, *the sentencing court can consider the entire background of the defendant, including his employment history and financial resources.*

*Bearden*, 461 U.S. at 669–70, 103 S.Ct. at 2071 (emphasis added). As the concurring justices interpreted the holding in *Bearden* and *Tate*, the equal protection clause prohibits the State from automatically converting a fine into a jail term. *Bearden*, 461 U.S. at 669–70, 103 S.Ct. at 2075 (White, J., concurring, joined by Burger, C.J., Rehnquist and Powell, J.J.).

■ A trial court's decision to place a defendant on probation reflects a determination the State's penological interests do not require imprisonment. *Bearden*, 461 U.S. at 670, 103 S.Ct. at 2071. Here, the trial judge noted because of her financial resources and employment situation, the appellant would be

unable to make restitution if placed on probation; he stated "probation without restitution would be a terrible injustice."

We find the trial judge's apparent determination probation would not serve the State's penological interests did not violate the appellant's rights to equal protection and due process of law. We overrule points of error one and two and affirm the trial court's judgment.