Affirmed and Memorandum Opinion filed May 16, 2006









Affirmed
and Memorandum Opinion filed May 16, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00613-CR

____________

 

JOSE ANTONIO
SALAZAR,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 958,867

 



 

M E M O R A N D U M   O
P I N I O N

Appellant Jose Antonio Salazar was
convicted of indecency with a child and sentenced to eighteen years= imprisonment and
a $10,000 fine.  In two issues, appellant
claims the trial court abused its discretion by allowing an expert to testify
during the punishment phase of trial (1) about the impact of child sexual abuse
on victims generally and (2) that appellant would benefit more from a treatment
program offered through prison than one offered through comunity supervision.  We affirm. 









Factual and
Procedural Background

Appellant is a step-uncle of the victim,
S.R.  Around May 2, 2003, when S.R. was
ten years old, she was watching television by herself at her step-grandparents= house, where she
stayed after school while her parents worked.[1]  Appellant arrived at the house and began
talking to S.R. about school.  S.R. told
appellant she wanted to try out for cheerleader but did not know how to do a
cartwheel.  Appellant said he would teach
her and began demonstrating cartwheels; between demonstrations, he tickled S.R.
and touched her inappropriately twice. 
The first time, appellant tickled S.R. on the couch and reached under
her skirt and inside her underwear, touching her vagina for twenty to thirty seconds.  The second time, he tickled her on the floor
and put his hand over and outside her underwear for about ten seconds.  Appellant=s behavior made
S.R. uncomfortable, so she excused herself to the bathroom.  Appellant followed her into the bathroom,
unzipped his pants, and Aasked if [she] could help him.@  S.R. moved away, and appellant said, APlease.@  S.R. replied, ANo,@ pushed appellant
away, and waited outside the house until he left shortly afterward.  She then called her mother, Angela, and
related what had happened.  Angela called
the police, who interviewed S.R.  About a
month later, S.R. was interviewed at the Children=s Assessment
Center (AC.A.C.@). 








Shortly after the offense, appellant
scheduled several sessions with a professional counselor, Nancy Morello.  During these sessions, he told Morello he was
troubled by his sexual thoughts, was Ahypersexual,@ and Ahad touched [S.R.]
in inappropriate ways and inappropriate places.@  Around the same time, Lakennia Cole, a Child
Protective Services (AC.P.S.@) officer,
interviewed appellant to investigate allegations that he sexually abused
S.R.  Appellant admitted to Cole that he
placed his hand on S.R.=s vagina, exposed himself to her in the
bathroom, and asked her to help him with his zipper.  Cole testified that Aat the time,
[appellant] was crying; and he stated that he had some mental illness@ for which he was
receiving therapy.

The State eventually charged appellant
with indecency with a child.  During the
guilt phase of trial, the State called several witnesses, including Morello,
Cole, S.R., and Angela.  Appellant also
testified and said he Aprobably@ tickled S.R.=s vagina
accidentally and that he asked S.R. to A[p]lease help
[him] out by letting [him] inside@ the
bathroom.  He claimed he did not
intentionally expose himself to her but said his Azipper might have
fallen down a little bit@ from doing cartwheels, possibly exposing
his Apubic hair or
something else.@ 
The jury convicted appellant.

The State called four witnesses during the
punishment phase of trial.  The first was
Dr. Lawrence Thompson, a clinical psychologist and director of therapy and
psychological services at the C.A.C. 
When Dr. Thompson acknowledged that he had never met appellant or S.R.,
appellant objected to further testimony Aon the basis of
relevance and 403 . . . [because] he has no actual experience with this case.@  The trial court overruled appellant=s objection and
granted him a running objection.  Dr.
Thompson then gave general background information about child sexual abuse
victims.  He explained that there are no
specific symptoms common to such victims, but many are angry, fear being left
alone, and experience Adepressive symptomatology, anxious
symptomatology, interpersonal difficulties, [and] sexual acting out behaviors.@  Dr. Thompson testified that although
treatment may benefit victims, it may not prevent manifestation of symptoms
later in life, such as during puberty or after marriage.  According to Dr. Thompson, although some
victims appear asymptomatic, they may be masking symptoms and Awill have strong
feelings about what has happened to them.@  Throughout his testimony, Dr. Thompson did
not discuss S.R.=s case specifically.








The State also called Angela, who
testified that before the offense, S.R. was outgoing, trusting, and frequently
smiled, but after the offense, she rarely smiled and was distrustful,
impatient, angry, and less affectionate. 
Angela also described how the incident had disrupted their family.  Next, two members of the Rice University
Police Department testified about a December 2004 incident in which appellant
exposed his penis to a student in a campus library.  The student ran away, and appellant
re-approached her and apologized, explaining that Ahe had a problem
with that.@ 
The student saw appellant at the same library a couple days later and
called the police, who arrested him and ordered him never to return to the Rice
campus.  Appellant=s mother testified
on appellant=s behalf and admitted on cross-examination
that he returned to Rice University after his arrest.

Analysis

A.  Victim Impact Evidence

In his first issue, appellant complains
that the trial court abused its discretion by allowing Dr. Thompson to testify
about the impact of child sexual abuse on victims generally.  Specifically, he argues that Dr. Thompson=s testimony was
irrelevant and unfairly prejudicial because it related to all possible effects of
sexual abuse on victims and was not limited to offenses similar in severity to
appellant=s. 
We review a trial court=s decision to
admit or exclude expert testimony under an abuse of discretion standard.  Sexton v. State, 93 S.W.3d 96, 99
(Tex. Crim. App. 2002).  A ruling within
the bounds of reasonable disagreement will not be disturbed on appeal.  Id. 









Article 37.07 of the Texas Code of
Criminal Procedure provides that the State and defendant may offer punishment
phase evidence as to Aany matter the court deems relevant to
sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, an opinion regarding his
character, [and] the circumstances of the offense for which he is being tried.@  Tex.
Code Crim. Proc. Ann. art. 37.07 _ 3(a)(1) (Vernon Supp. 2005).  The Code does not define Arelevant,@ and the Court of
Criminal Appeals has defined relevant punishment evidence as that which helps
the jury Atailor the sentence to the particular
offense@ and Atailor the
sentence to the particular defendant.@  See Rogers v. State, 991 S.W.2d 263,
265 (Tex. Crim. App. 1999) (noting that the traditional definition of relevance
under Evidence Rule 401 is not a Aperfect fit@ within the
punishment context).  Victim
impact testimony in non-capital felony cases may be admitted if it has some
bearing on the defendant=s personal responsibility and moral
guilt.  See Salazar v. State, 90
S.W.3d 330, 335 (Tex. Crim. App. 2002); Boone v. State, 60 S.W.3d 231,
238 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).  To be admissible, the testimony must have a Aclose, direct link
to the circumstances of the offense.@  See Brooks v. State, 961 S.W.2d 396,
399 (Tex. App.CHouston [1st Dist.] 1997, no pet.).  If the defendant should have anticipated the
particular effect on the victim or the victim=s family, then the
evidence is relevant.  Boone, 60
S.W.3d at 238.  Victim impact evidence
that is relevant may still be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
See Tex. R. Evid.
403; Boone, 60 S.W.3d at 239 (noting that A[i]t does appear
that victim impact evidence can run afoul of Rule 403@ and noting that
the Court of Criminal Appeals has cautioned courts to place appropriate limits
on such evidence).

Dr. Thompson neither met with S.R. nor
addressed the particular facts of this case. 
Rather, he testified about a range of possible effects of child sexual
abuse upon victims generally.  Much of
his testimony concerned symptoms that S.R. did not exhibit and symptoms that some
sexual abuse victims may eventually manifest at later points in their
lives.  We find this testimony was overly
general and not closely linked to appellant=s particular
offense, nor was it clear that appellant should have anticipated any or all of
this range of possible effects on S.R.  See
Boone, 60 S.W.3d at 238; Brooks, 961 S.W.2d at 399.  Thus, Dr. Thompson=s testimony had
little bearing on his personal responsibility and moral guilt and was not
relevant in helping the jury tailor his sentence.  See Salazar, 90 S.W.3d at 335; see
also Miller-El v. State, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990) (A[O]ne >circumstance of
the offense= is degree of injury, even extending into
the future, so long as a factfinder may rationally attribute moral culpability
to the accused for that injury.@ (emphasis
added)).  Further, it carried a
substantial risk of unfairly prejudicing the jury by suggesting that they
speculate about symptoms that S.R. might never exhibit.  See Boone, 60 S.W.3d at 239.  Under these circumstances, we find the
admission of Dr. Thompson=s testimony was erroneous and beyond the
bounds of reasonable disagreement.  Thus,
the trial court abused its discretion by admitting it. 








Having found error, we must determine
whether it warrants reversal.  See
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  A non-constitutional error does not require
reversal unless it affects substantial rights by having a substantial and
injurious effect or influence in determining the jury=s verdict.  Tex.
R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997).  Substantial rights are
not affected if, after examining the record as a whole, we have a fair
assurance that the error did not influence the jury or had but a slight
effect.  Guevara v. State, 152
S.W.3d 45, 53 (Tex. Crim. App. 2004). 

Given the testimony adduced at trial, we
find it unlikely that Dr. Thompson=s testimony could
have more than slightly affected the jury=s determination of
appellant=s punishment.  Dr. Thompson=s testimony about
the symptoms experienced by child sexual abuse victims entails just four pages
of trial transcript.  Aside from this
testimony, there was abundant evidence the jury could have considered in
assessing appellant=s punishment.  S.R. testified about the offense, and Angela
described its impact on S.R.=s behavior and on
the family.  Additionally, Morello and
Cole testified that appellant admitted he inappropriately touched S.R.  Despite these previous admissions, at trial
appellant testified that his touching S.R. and exposing himself to her were
accidental.  The jury also heard
testimony that appellant exposed himself to a Rice University student and
returned to campus after being forbidden to do so.  Appellant=s repeated
exposures of his penis and inconsistent explanations about how he touched and
exposed himself to S.R. were relevant to his punishment.  See Tex.
Code Crim. Proc. Ann. art. 37.07 _ 3(a)(1).  Considering this evidence, we find there is
at least a fair assurance that Dr. Thompson=s testimony did
not influence the jury=s assessment of appellant=s punishment or,
if it did, the effect was slight.  See
Guevara, 152 S.W.3d at 53.  Thus, we
overrule appellant=s first issue.

B. 
Punishment Recommendation 

In his second issue, appellant complains
that the trial court abused its discretion in allowing Dr. Thompson to
recommend imprisonment over probation.[2]  Specifically, he argues that expert witnesses
are not allowed to recommend a particular punishment.  At trial, appellant obtained a running
objection to Dr. Thompson=s testimony Aon the basis of
relevance and 403.@ 
However, on appeal, his argument and the cases he cites relate to the
prohibition of expert or lay recommendations on punishment, which concern
Evidence Rules 701 and 702.  See Tex. R. Evid. 701, 702; Sattiewhite
v. State, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989) (upholding exclusion
of opinion testimony of expert as to which punishment was appropriate under
Rule 702); Mayo v. State, 861 S.W.2d 953, 955 n.2 (Tex. App.CHouston [1st Dist.]
1993, pet. ref=d) (excluding such testimony from lay
witnesses under Rule 701).  Because these
evidentiary theories differ from appellant=s trial objection,
he presents nothing for appellate review. 
See Cook v. State, 858 S.W.2d 467, 474 (Tex. Crim. App. 1993) (AWhen the complaint
on appeal differs from that made at trial, the error is waived.@); Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (AAn objection
stating one legal basis may not be used to support a different legal theory on
appeal.@).  








Moreover, even if appellant had preserved
error on this issue, his argument would fail. 
Dr. Thompson described the various treatment programs available through
prison and community supervision.  Such
testimony is not impermissible.  See
Meador v. State, No. 01-02-00505-CR, 2003 WL 21026915, at *5 (Tex. App.CHouston [1st
Dist.] May 8, 2003, pet. ref=d) (not designated
for publication) (upholding admission of expert testimony describing various
treatment options available to sex offenders during incarceration and
probation); Najar v. State, 74 S.W.3d 82, 87 (Tex. App.CWaco 2002, no
pet.) (noting that the legislature has Aexpressly made
community supervision a relevant issue at the punishment phase in a jury trial,@ thus permitting
testimony describing prison classification system and rehabilitative
programs).  Although Dr. Thompson opined
that the TDCJ program was more thorough than outpatient treatment programs, he
did not specifically mention appellant or recommend a punishment for him.  Thus, we overrule appellant=s second issue.

We affirm the trial court=s judgment.

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed May
16, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The trial
testimony indicates that S.R.=s grandparents and several other family members were
outside the house while S.R. watched television.





[2]  Dr. Thompson discussed sex offender
treatment programs available through the Texas Department of Criminal Justice (ATDCJ@) and through community
supervision.  He opined that the TDCJ
program is more Athorough@ than outpatient programs because
it offers more frequent therapy, individualized treatment plans, and a
therapeutic community.  He also noted
that the TDCJ program incorporates family members,  monitors Afantasy material,@ and provides rehabilitation and management plans upon
release.